# EXHIBIT E

Return To:
Saxon Mortgage Services, Inc.
4708 Mercantile Dr
Ft. Worth, TX 76137

Prepared By:
Saxon Mortgage Services, Inc.
4708 Mercantile Dr
Ft. Worth, TX 76137

Investor Loan # ███████

[Space Above This Line For Recording Data]

# HOME AFFORDABLE MODIFICATION AGREEMENT
(Step Two of Two-Step Documentation Process)

Borrower ("I"): [1]
ROSE M. SABANGAN,

Lender or Servicer ("Lender"):
Bank of America, National Association, as Trustee for Morgan Stanley Mortgage Loan Trust 2006-16AX

---

[1]  If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT with
MERS - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
VMP ®
Wolters Kluwer Financial Services ©2009

Form 3157 3/09 (rev. 8/09)

D14200 (0909)
Page 1 of 10

Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): April 13, 2006

Loan Number: ███████

MIN: ███████████

Property Address *[and Legal Description if recordation is necessary]* ("Property"):
3372 FORT INDEPENDENCE STREET
BRONX, NY 10463-0000
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF, AS EXHIBIT 'A'

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations.** I certify, represent to Lender and agree:

    A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B. I live in the Property as my principal residence, and the Property has not been condemned;

    C. There has been no change in the ownership of the Property since I signed the Loan Documents;

    D. I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));

    E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

    F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

---

G. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

   B. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on February 1, 2010 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on February 1, 2010.

   A. The new Maturity Date will be:          May 1, 2036          .

   B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $476,618.59 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

   C. Interest at the rate of 2% will begin to accrue on the New Principal Balance as of January 1, 2010 and the first new monthly payment on the New Principal Balance will be due on February 1, 2010. My payment schedule for the modified Loan is as follows:

**PAYMENT SCHEDULE APPEARS ON PAGE 4.**

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2% | 01/01/2010 | $1,610.97 | $339.37, may adjust periodically | $1,950.34, may adjust periodically | 02/01/2010 | 60 |
| 6 | 3% | 01/01/2015 | $1,830.60 | May adjust periodically | May adjust periodically | 02/01/2015 | 12 |
| 7 | 4% | 01/01/2016 | $2,059.06 | May adjust periodically | May adjust periodically | 02/01/2016 | 12 |
| 8 | 5% | 01/01/2017 | $2,294.76 | May adjust periodically | May adjust periodically | 02/01/2017 | 12 |
| 9-27 | 5.125% | 01/01/2018 | $2,324.29 | May adjust periodically | May adjust periodically | 02/01/2018 | 220 |

* The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.
SECTION 3.C. CONTINUES ON PAGE 5.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT with MERS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services ©2009

Form 3157 3/09 (rev. 8/09)
D14200 (0909)
Page 4 of 10

      The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

      I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan. My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

    D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

    E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4. **Additional Agreements.** I agree to the following:

    A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

    B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

    C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

    D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

    E. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

    F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT with MERS** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
VMP ®
Wolters Kluwer Financial Services ©2009

Form 3157 3/09 (rev. 8/09)
D14200 (0909)
Page 5 of 10

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of 3300 S.W. 34th Avenue, Suite 101, Ocala, FL 34474, P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

N.  I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.
SIGNATURE PAGES FOLLOW.**

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT with
MERS** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
VMP ®
Wolters Kluwer Financial Services ©2009

Form 3157 3/09 (rev. 8/09)

D14200 (0909)
Page 7 of 10

_Rose Marie Sabangan_ _____ (Seal)
~~ROSE M. SABANGAN~~ ROSE MARIE SABANGAN                                -Borrower
 IW

_____ (Seal)
                                             -Borrower

_____ (Seal)
                                             -Borrower

_____ (Seal)
                                             -Borrower

## BORROWER ACKNOWLEDGEMENT

State of New York
County of ~~BRONX~~ IW NEW YORK
On the  2nd  day of  MARCH, 2010 , before me, the undersigned, personally appeared
~~ROSE M. SABANGAN~~ ROSE MARIE SABANGAN
  IW
personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

**Ira D. Wasserman**                    _Ira D. Wasserman_ _____
**Notary Public State of New York**     Notary Public
**Commission No. 01-WA6155904**
**Qualified in Kings County**
**Commission Expires 11/20/2010**

---

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT with          Form 3157 3/09 (rev. 8/09)
MERS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®                                                           D14200  (0909)
Wolters Kluwer Financial Services ©2009                         Page 8 of 10

Bank of America, National Association, as Trustee for Morgan Stanley Mortgage Loan Trust 2006-16AX, _____ (Seal)
by Saxon Mortgage Services, Inc., as its attorney-in-fact                                                                                    -Lender

By: _____

## LENDER ACKNOWLEDGEMENT

STATE OF Texas                          Tarrant                                            County ss:

On the _____ day of _____, before me, the undersigned, a notary public in and for said state, personally appeared                                ,                                ,
who being by me duly sworn says that he/she/they are authorized to execute instruments for the corporation acting as attorney-in-fact on behalf of

Bank of America, National Association, as Trustee for Morgan Stanley Mortgage Loan Trust 2006-16AX, by Saxon Mortgage Services, Inc., as its attorney-in-fact

,
personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

Mortgage Electronic Registration Systems, Inc. _____ (Seal)
                                                                          -Mortgagee
By: _____

## MORTGAGEE ACKNOWLEDGEMENT

**STATE OF Texas**                           **Tarrant**                           **County ss:**

On the 18 day of March, 2010, before me, the undersigned, a notary public in and for said state, personally appeared Kevin Smith, AVP, of Mortgage Electronic Registration Systems, Inc., personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

FABIOLA PATRICIA SOSA
NOTARY PUBLIC
State of Texas
Comm. Exp. 06/10/2013

Notary Public            Fabiola Sosa

Tax Map Information:

## EXHIBIT A

## Legal Description of Property

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AND BEING IN THE BOROUGH AND COUNTY OF BRONX, CITY AND STATE OF NEW YORK, BEING A PART OF LOT NO.57 ON A CERTAIN MAP ENTITLED "MAP OF LAND AT KINGSBRIDGE IN THE 24TH WARD OF THE NEW YORK, BELONGING TO WILLIAM OGDEN GILES" MADE BY STEPHEN S. HAIGHT, C. E. DATED APRIL 24TH,1886 AND FILED IN THE REGISTER'S OFFICE, NEW YORK COUNTY AS MAP NO.964 WHICH PART OF SAID LOT NO.57 IS BOUNDED AND DESCRIBED AS FOLLOWS ; BEGINNING AT A POINT ON THE EASTERLY SIDE OF FORT INDEPENDENCE STREET, 60 FEET WIDE, AT THE INTERSECTION OF THE SOUTHERLY LINE OF LOT NO.57 ON AFOREMENTIONED MAP AND SAID EASTERLY SIDE OF FORT INDEPENDENCE STREET WHICH POINT OF BEGINNING IS DISTANT 547.30 FEET NORTHEASTERLY SIDE OF SAID FORT INDEPENDENCE STREET WITH THE NORTHERLY SIDE OF GILES PLACE ; RUNNING THENCE EASTERLY ALONG THE SOUTHERLY LINE OF SAID LOT NO.57 A DISTANCE OF 158.64 FEET TO THE EASTERLY LINE OF SAID LOT NO.57 ; THENCE NORTHERLY ALONG THE EASTERLY LINE OF LOT NO.57 A DISTANCE OF 28.02 FEET TO THE CENTER LINE OF LOT 57 ; THENCE WESTERLY ALONG THE CENTER LINE OF LOT NO.57 A DISTANCE OF 81.57 FEET TO A POINT ; THENCE NORTHERLY ON A LINE DRAWN AT RIGHT ANGLES TO THE LAST MENTIONED COURSE 4.23 FEET ; THENCE WESTERLY ON A LINE FORMING AN EXTERIOR ANGLE WITH THE LAST MENTIONED COURSE 91 DEGREES 19 MINUTES 11 SECONDS A DISTANCE OF 60 FEET TO A POINT ; THENCE NORTHERLY ON A LINE FORMING AN EXTERIOR ANGLE WITH THE LAST MENTIONED COURSE 88 DEGREES 20 MINUTES 49 SECONDS A DISTANCE OF 3.50 FEET ; THENCE WESTERLY ON A LINE DRAWN AT RIGHT ANGLES TO THE LAST MENTIONED COURSE 17 FEET TO THE SAID EASTERLY SIDE OF FORT INDEPENDENCE STREET ; THENCE SOUTHERLY ALONG THE ARC OF A CURVE BEARING TO THE LEFT HAVING A RADIUS OF 2400 FEET A LENGTH OF 16 FEET TO THE POINT OR PLACE OF BEGINNING.