Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is also required under Applicable it is actually received by Lender. If any notice required by this Security Instrument is given to Lender when Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will

DocMagic *eForms* 800-649-1362
www.docmagic.com

begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered

hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."**

**If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.**

**Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:**

**(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;**

**(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:**

**(1) The promise or agreement that I failed to keep or the default that has occurred;**

---

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

**23. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

**24. Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

**25. Borrower's Statement Regarding the Property  [check box as applicable].**

☒  This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☐  This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐  This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 15 of this Security Instrument and in any Rider signed by me and recorded with it.

_Rose Marie Sabangan_ (Seal)
ROSE MARIE SABANGAN                -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

Witness:                          Witness:

_____         _____

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01                          Page 15 of 16

**DocMagic** *eForms* 800-649-1362
www.docmagic.com

Ny303315.mzm.15.tem

State of New York                              )
                                               ) ss.
County of   BRONX                              )

    On the    13th    day of    APRIL                      , in the year   2006  , before me,
the undersigned, personally appeared   ROSE MARIE SABANGAN

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s)
is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of
which the individual(s) acted, executed the instrument.

_____
                           Notary Public, State of New York

                                            Print or Type Name

**SEAL**      WILLIAM E. WILSON
                    Notary Public, State of New York
                    No. 01WI6023601
                    Qualified in Nassau County
                    Commission Expires 4/25/20

     (Seal, if any)                        My commission expires:

Tax Map Information No.:  SEC: 12,  BLK: 3258,  LOT: 63

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01                          Page 16 of 16                    *DocMagic eForms* 800-649-1362
                                                  www.docmagic.com

Ny303316.mzm.16.tem

## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument.The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2025021300496001001E66D8

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 3 |
|---|---|---|
| **Document ID:** **2025021300496001** | Document Date: 02-10-2025 | Preparation Date: 02-13-2025 |
| Document Type:  ASSIGNMENT, MORTGAGE | | |
| Document Page Count: 1 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| NATIONWIDE TITLE CLEARING, LLC<br>2100 ALT 19<br>PALM HARBOR, FL 34683-2620<br>SIERRA.JUDD@COVIUS.COM | PHH MORTGAGE<br>NATIONWIDE TITLE CLEARING LLC 2100 ALT. 19 NORTH<br>PALM HARBOR, FL 34683<br>SUPPORT@SIMPLIFILE.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 3258 | 63 | Entire Lot | 3372 FT INDEPENDENCE ST |

Property Type: DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

CRFN:    2006000264214

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC<br>11819 MIAMI ST 100<br>OMAHA, NE 68164 | BANK OF AMERICA NATIONAL ASSOCIATION AS TRUSTEE<br>5720 PREMIER PARK DRIVE<br>WEST PALM BEACH, FL 33407 |
| ☒  Additional  Parties Listed on Continuation  Page | |

### FEES AND TAXES

| Mortgage : | | | | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | Filing Fee: | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 42.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed          02-20-2025 09:27
City Register File No.(CRFN):
**2025000047031**

*City Register Official Signature*



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

2025021300496001001C6458

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 3 |
|---|---|

**Document ID:** 2025021300496001          Document Date: 02-10-2025          Preparation Date: 02-13-2025
Document Type: ASSIGNMENT, MORTGAGE

---

**PARTIES**

**ASSIGNOR/OLD LENDER:**
LEND AMERICA
11819 MIAMI ST 100
OMAHA, NE 68164

---

**PARTIES**

**ASSIGNEE/NEW LENDER:**
LASALLE BANK NATIONAL ASSOCIATION
5720 PREMIER PARK DRIVE
WEST PALM BEACH, FL 33407

**ASSIGNEE/NEW LENDER:**
US BANK NATIONAL ASSOCIATION AS TRUSTEE
5720 PREMIER PARK DRIVE
WEST PALM BEACH, FL 33407

**ASSIGNEE/NEW LENDER:**
MORGAN STANLEY MORTGAGE LOAN TRUST
2006-16AX
5720 PREMIER PARK DRIVE
WEST PALM BEACH, FL 33407

When Recorded Return To:
PHH Mortgage
C/O Nationwide Title Clearing, LLC
2100 Alt. 19 North
Palm Harbor, FL 34683

## ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR LEND AMERICA, ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: 11819 Miami St., Suite 100, Omaha, NE 68164; P.O. Box 2026, Flint, MI 48501-2026)** by these presents does convey, grant, assign, transfer and set over the described Mortgage, as the same has not been consolidated, extended or modified, all liens, and any rights due or to become due thereon to **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR MORGAN STANLEY MORTGAGE LOAN TRUST 2006-16AX, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-16AX, WHOSE ADDRESS IS C/O PHH MORTGAGE CORPORATION, 5720 PREMIER PARK DRIVE, WEST PALM BEACH, FL 33407, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage is dated 04/13/2006, made by **ROSE MARIE SABANGAN** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR LEND AMERICA, ITS SUCCESSORS AND ASSIGNS**, in the principal sum of $440,000.00 and recorded on 05/11/2006, in **CRFN # 2006000264214**, in the office of the Registry of **BRONX** County, **NY.**

Property is commonly known as: 3372 FT INDEPENDENCE ST,
                BRONX, NY 10463.

This mortgage(s) has not been assigned of record.

This Assignment is not subject to the requirements of section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

**Dated this 10th day of February in the year 2025.**
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR LEND AMERICA, ITS SUCCESSORS AND ASSIGNS**

*Ml Eichen*

**MACKENZIE EICHEN**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

*K. Eisele*

**KOSTADINA EISELE**
**WITNESS**

STATE OF FLORIDA    COUNTY OF PINELLAS
Before me by means of [X] physical presence or [ ] online notarization on, this 10th day of February in the year 2025, the undersigned, personally appeared Mackenzie Eichen as VICE PRESIDENT for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR LEND AMERICA, ITS SUCCESSORS AND ASSIGNS, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

*Tanner Dickson*

**TANNER DICKSON**
**COMM EXPIRES: 10/01/2028**

TANNER DICKSON
Notary Public · State of Florida
Commission # HH 580094
My Comm. Expires Oct 1, 2028
Bonded through National Notary Assn.

Property ID(S/B/L) Block: 3258 Lot: 63
_____ MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)  OCWEN-NVLER
$42.00 MIN _____ MERS PHONE 1-888-679-6377 MERS Mailing Addresses: 11819 Miami St., Suite 100, Omaha, NE 68164; P.O. Box 2026, Flint, MI 48501-2026 _____

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument.The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2025092900230001002E0D96

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 4 |
|---|---|---|
| Document ID: **2025092900230001** | Document Date: 09-23-2025 | Preparation Date: 09-29-2025 |
| Document Type: ASSIGNMENT, MORTGAGE | | |
| Document Page Count: 3 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| NATIONWIDE TITLE CLEARING, LLC<br>2100 ALT 19<br>PALM HARBOR, FL 34683-2620<br>CLARISSA.COMBS-GERMANY@COVIUS.COM | PHH MORTGAGE CORPORATION<br>NATIONWIDE TITLE CLEARING LLC 2100 ALT. 19<br>NORTH<br>PALM HARBOR, FL 34683<br>SUPPORT@SIMPLIFILE.COM |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 3258 | 63 | Entire Lot | 3372 FT INDEPENDENCE ST |

Property Type: DWELLING ONLY - 1 FAMILY

**CROSS REFERENCE DATA**

CRFN: 2006000264214

**PARTIES**

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| US BANK NATIONAL ASSOCIATION<br>5720 PREMIER PARK DRIVE<br>WEST PALM BEACH, FL 33407 | PHH MORTGAGE CORPORATION<br>5720 PREMIER PARK DRIVE<br>WEST PALM BEACH, FL 33407 |

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 52.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed          09-30-2025 16:11
City Register File No.(CRFN):
**2025000266665**

*City Register Official Signature*

When Recorded Return To:
PHH Mortgage Corporation
C/O Nationwide Title Clearing,
LLC 2100 Alt. 19 North
Palm Harbor, FL 34683

Loan Number ▆▆▆▆▆▆▆

# ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR MORGAN STANLEY MORTGAGE LOAN TRUST 2006-16AX, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-16AX, WHOSE ADDRESS IS C/O PHH MORTGAGE CORPORATION, 5720 PREMIER PARK DRIVE, WEST PALM BEACH, FL 33407, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Mortgage, as the same has not been consolidated, extended or modified, with all interest secured thereby, all liens, and any rights due or to become due thereon to PHH MORTGAGE CORPORATION, WHOSE ADDRESS IS 5720 PREMIER PARK DRIVE, WEST PALM BEACH, FL 33407 (800)449-8767, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Mortgage is dated 04/13/2006, made by ROSE MARIE SABANGAN to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR LEND AMERICA, ITS SUCCESSORS AND ASSIGNS, in the principal sum of $440,000.00 and recorded on 05/11/2006, in CRFN # 2006000264214 in the office of the Registry of BRONX County, NEW YORK.

Property Address: 3372 FORT INDEPENDENCE STREET, BRONX, NY 10463

See Exhibit attached for Assignments, Modifications etc.
This Assignment is not subject to the requirements of section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

Dated this 19th day of September, 2025
U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR MORGAN STANLEY MORTGAGE LOAN TRUST 2006-16AX, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-16AX, by PHH MORTGAGE CORPORATION SUCCESSOR BY MERGER TO OCWEN LOAN SERVICING, LLC, its Attorney-in-Fact (POA RECORDED: 08/24/2023 INST#: 2023000216506)

By: _____
Donna Valenzano, Senior Servicing Operations Specialist

By: _____
    Witness                    Kelley Earle

Property ID(S/B/L) Block: 3258 Lot: 63

Loan Number ▓▓▓▓▓▓

STATE OF FLORIDA         COUNTY OF PALM BEACH

Before me by means of [X] physical presence or [ ] online notarization on, this 19th day of September, 2025, the undersigned, personally appeared Donna Valenzano as Senior Servicing Operations Specialist for PHH MORTGAGE CORPORATION SUCCESSOR BY MERGER TO OCWEN LOAN SERVICING, LLC as Attorney-in-Fact for U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR MORGAN STANLEY MORTGAGE LOAN TRUST 2006-16AX, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-16AX, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name (s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Yanique Atkinson Edwards
Notary Public - STATE OF FLORIDA
Commission expires:    JAN 2 4 2026

Notary Public State of Florida
Yanique Atkinson Edwards
My Commission
HH 219898
Exp. 1/24/2026

Property ID(S/B/L) Block: 3258 Lot: 63

Loan Number ███████

Exhibit

Assignment: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"). AS MORTGAGEE AS NOMINEE FOR LEND AMERICA, ITS SUCCESSORS AND ASSIGNS TO U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for Morgan Stanley Mortgage Loan Trust 2006-16AX, Mortgage Pass-Through Certificates, Series 2006-16AX DATED 02-10-2025. REC: 02-20-2025, AS INSTRUMENT # 205000047031

Return To:
Saxon Mortgage Services, Inc.
4708 Mercantile Dr
Ft. Worth, TX 76137


Prepared By:
Saxon Mortgage Services, Inc.
4708 Mercantile Dr
Ft. Worth, TX 76137


Investor Loan # ▮▮▮▮▮▮▮

[Space Above This Line For Recording Data] ——————

# HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)


Borrower ("I"): [1]
ROSE M. SABANGAN,



Lender or Servicer ("Lender"):
Bank of America, National Association, as Trustee for Morgan Stanley Mortgage Loan Trust 2006-16AX




---

[1]    If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT with MERS** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
VMP ®
Wolters Kluwer Financial Services ©2009

Form 3157 3/09 (rev. 8/09)

D14200 (0909)
Page 1 of 10

Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): April 13, 2006

Loan Number: ████████

MIN: ████████

Property Address *[and Legal Description if recordation is necessary]* ("Property"):
3372 FORT INDEPENDENCE  STREET
BRONX, NY  10463-0000
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF, AS EXHIBIT 'A'

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.  **My Representations.**   I certify, represent to Lender and agree:

  A.  I am experiencing  a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

  B.  I live in the Property as my principal residence, and the Property has not been condemned;

  C.  There has been no change in the ownership of the Property since I signed the Loan Documents;

  D.  I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting  to qualify for the Home Affordable Modification program ("Program"));

  E.  Under penalty of perjury, all documents and information I have provided to Lender in connection  with this Agreement, including  the documents  and information regarding my eligibility for the Program, are true and correct;

  F.  If Lender requires me to obtain credit counseling  in connection with the Program, I will do so; and

**MULTISTATE   HOME AFFORDABLE  MODIFICATION     AGREEMENT  with  MERS  ·** Single Family - **Fannie  Mae/Freddie  Mac UNIFORM  INSTRUMENT**
**VMP  ®**
Wolters Kluwer Financial Services  ©2009

Form 3157 3/09 (rev. 8/09)

D14200  (0909)
Page 2 of 10

G. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on February 1, 2010 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on February 1, 2010.

A. The new Maturity Date will be:          May 1, 2036          .

B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $476,618.59 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. Interest at the rate of 2% will begin to accrue on the New Principal Balance as of January 1, 2010 and the first new monthly payment on the New Principal Balance will be due on February 1, 2010. My payment schedule for the modified Loan is as follows:

**PAYMENT SCHEDULE APPEARS ON PAGE 4.**

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|-----------------------------------------------|------------------------------------------|------------------------|-------------------|----------------------------|
| 1-5 | 2% | 01/01/2010 | $1,610.97 | $339.37, may adjust periodically | $1,950.34, may adjust periodically | 02/01/2010 | 60 |
| 6 | 3% | 01/01/2015 | $1,830.60 | May adjust periodically | May adjust periodically | 02/01/2015 | 12 |
| 7 | 4% | 01/01/2016 | $2,059.06 | May adjust periodically | May adjust periodically | 02/01/2016 | 12 |
| 8 | 5% | 01/01/2017 | $2,294.76 | May adjust periodically | May adjust periodically | 02/01/2017 | 12 |
| 9-27 | 5.125% | 01/01/2018 | $2,324.29 | May adjust periodically | May adjust periodically | 02/01/2018 | 220 |

\* The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.**
**SECTION 3.C. CONTINUES ON PAGE 5.**

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT with MERS -** Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** VMP ®
Wolters Kluwer Financial Services ©2009

Form 3157 3/09 (rev. 8/09)

D14200 (0909)
Page 4 of 10

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan. My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4. **Additional Agreements.**   I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of 3300 S.W. 34th Avenue, Suite 101, Ocala, FL 34474, P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

N.  I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.
SIGNATURE PAGES FOLLOW.**

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT with MERS -** Single Family **- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
VMP ®
Wolters Kluwer Financial Services ©2009

Form 3157 3/09 (rev. 8/09)

D14200 (0909)
Page 7 of 10

*Rose Marie Sabangan*                                              (Seal)
~~ROSE M. SABANGAN~~ *ROSE MARIE SABANGAN*                         -Borrower
  *Tw*

_____                  (Seal)
                                                                  -Borrower

_____                  (Seal)
                                                                  -Borrower

_____                  (Seal)
                                                                  -Borrower


## BORROWER ACKNOWLEDGEMENT

**State of New York**
**County of ~~BRONX~~ *Tw NEW YORK***

On the **2nd** day of **MARCH, 2010**          , before me, the undersigned, personally appeared
~~ROSE M. SABANGAN~~ *ROSE MARIE SABANGAN*
  *Tw*
personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

            **Ira D. Wasserman**                    _____
    **Notary Public State of New York**             Notary Public
      **Commission No. 01-WA6155904**
        **Qualified in Kings County**
     **Commission Expires 11/20/2010**


**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT with**    Form 3157 3/09 (rev. 8/09)
**MERS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
VMP  ®                                                         D14200   (0909)
Wolters Kluwer Financial Services ©2009                       Page 8 of 10

Bank of America, National Association, as Trustee for Morgan Stanley Mortgage Loan Trust 2006-16AX, _____ (Seal)
by Saxon Mortgage Services, Inc., as its attorney-in-fact                                                                          -Lender


By: _____


## LENDER ACKNOWLEDGEMENT

**STATE OF Texas**                                    **Tarrant**                                                    **County  ss:**

On the _____ day of _____ , before me, the undersigned, a notary public in and for said state, personally appeared _____ , who being by me duly sworn says that he/she/they are authorized to execute instruments for the corporation acting as attorney-in-fact on behalf of

Bank of America, National Association, as Trustee for Morgan Stanley Mortgage Loan Trust 2006-16AX, by Saxon Mortgage Services, Inc., as its attorney-in-fact


personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) *is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in* his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.



_____
Notary Public


**MULTISTATE  HOME  AFFORDABLE  MODIFICATION  AGREEMENT  with**
**MERS - Single Family - Fannie Mae/Freddie  Mac UNIFORM  INSTRUMENT**
VMP  ®
Wolters Kluwer Financial Services ©2009

Form 3157 3/09 (rev. 8/09)

D14200   (0909)
Page 9 of 10

Mortgage Electronic Registration Systems, Inc. _____ (Seal)

_____ -Mortgagee

By: _____

## MORTGAGEE ACKNOWLEDGEMENT

STATE OF **Texas**                          **Tarrant**                          **County ss:**

On the ʲⁿ day of March, 2010 , before me, the undersigned, a notary public in and for said state, personally appeared Kevin Smith , AVP , of Mortgage Electronic Registration Systems, Inc., personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

**FABIOLA PATRICIA SOSA**
**NOTARY PUBLIC**
**State of Texas**
**Comm. Exp. 06/10/2013**

Notary Public        Fabiola Sosa

Tax Map Information:

## EXHIBIT A
## Legal Description of Property

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND WITH THE BUILDINGS AND
IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AND BEING IN THE BOROUGH AND
COUNTY OF BRONX, CITY AND STATE OF NEW YORK, BEING A PART OF LOT NO.57 ON A
CERTAIN MAP ENTITLED "MAP OF LAND AT KINGSBRIDGE IN THE 24TH WARD OF THE
NEW YORK, BELONGING TO WILLIAM OGDEN GILES" MADE BY STEPHEN S. HAIGHT, C.
E. DATED APRIL 24TH,1886 AND FILED IN THE REGISTER'S OFFICE, NEW YORK
COUNTY AS MAP NO.964 WHICH PART OF SAID LOT NO.57 IS BOUNDED AND DESCRIBED AS
FOLLOWS ; BEGINNING AT A POINT ON THE EASTERLY SIDE OF FORT INDEPENDENCE STREET,
60 FEET WIDE, AT THE INTERSECTION OF THE SOUTHERLY LINE OF LOT NO.57 ON
AFOREMENTIONED MAP AND SAID EASTERLY SIDE OF FORT INDEPENDENCE STREET WHICH
POINT OF BEGINNING IS DISTANT 547.30 FEET NORTHEASTERLY SIDE OF SAID FORT
INDEPENDENCE STREET WITH THE NORTHERLY SIDE OF GILES PLACE ; RUNNING THENCE
EASTERLY ALONG THE SOUTHERLY LINE OF SAID LOT NO.57 A DISTANCE OF 158.64 FEET
TO THE EASTERLY LINE OF SAID LOT NO.57 : THENCE NORTHERLY ALONG THE EASTERLY
LINE OF LOT NO.57 A DISTANCE OF 28.02 FEET TO THE CENTER LINE OF LOT 57 :
THENCE WESTERLY ALONG THE CENTER LINE OF LOT NO.57 A DISTANCE OF 81.57 FEET
TO A POINT ; THENCE NORTHERLY ON A LINE DRAWN AT RIGHT ANGLES TO THE LAST
MENTIONED COURSE 4.23 FEET ; THENCE WESTERLY ON A LINE FORMING AN EXTERIOR
ANGLE WITH THE LAST MENTIONED COURSE 91 DEGREES 19 MINUTES 11 SECONDS A
DISTANCE OF 60 FEET TO A POINT ; THENCE NORTHERLY ON A LINE FORMING AN EXTERIOR
ANGLE WITH THE LAST MENTIONED COURSE 88 DEGREES 20 MINUTES 49 SECONDS A
DISTANCE OF 3.50 FEET ; THENCE WESTERLY ON A LINE DRAWN AT RIGHT ANGLES TO THE
LAST MENTIONED COURSE 17 FEET TO THE SAID EASTERLY SIDE OF FORT INDEPENDENCE
STREET ; THENCE SOUTHERLY ALONG THE ARC OF A CURVE BEARING TO THE LEFT HAVING A
RADIUS OF 2400 FEET A LENGTH OF 16 FEET TO THE POINT OR PLACE OF BEGINNING.